UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**ANTHONY OUTAR,**

                      **Plaintiff,**

          -v-                            **03-CV-0916**

**GRENO INDUSTRIES, INC., MICHAEL FORSLUND,
MICHAEL VANINAUSKAS, DAN PETCHEL,
MARK LONGSTAFF, JOSEPH BARONE, and
CHARLES ZIMMERMAN,**

                      **Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Anthony Outar
Plaintiff, *pro se*

Honen, Wood, P.C.
Marc H. Goldberg, Esq., of Counsel
126 State Street, 5th Floor
Albany, New York 12207-1606
Attorneys for Defendants

**Hon. Norman A. Mordue, D.J.:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

In this employment discrimination action, defendants move for summary judgment. For the reasons set forth below, the Court grants the motion in its entirety.

### BACKGROUND

Plaintiff filed a charge with New York State Division of Human Rights ("DHR") dated June 20, 2002, asserting the following:

> I am Guyanese race and National Origin.
> On or about September 17, 2001, I began employment with the Respondent as a

>Machine Operator. My time, attendance, and performance are all satisfactory.
>
>Throughout my employment I have been treated differently than other employees because of my race and National Origin. Specifically, on or about December 15, 2001 I attempted to ask a question to Diane Stangle, Human Resources Coordinator. Ms. Stangle did not answer my question, and mocked me in front of other employees. On or about May 25, 2002, Mike Vainauskas spoke to me in a manner that was disrespectful. On or about June 14, 2002, Mark Longstaff hit my ears. No other employees are treated in this manner. I believe these actions occurred because of my race and National Origin.

(Paragraph numbering omitted.)

After investigation, DHR found "insufficient evidence to indicate that the Complainant was subject to a pervasive hostile work environment related to his race or National Origin" and "no evidence that any of the identified alleged actions were related to the Complainant's race or National Origin." DHR made a determination of no probable cause on February 26, 2003. On April 29, 2003, the Equal Employment Opportunity Commission adopted the findings of DHR and issued a right-to-sue letter.

On July 22, 2003, plaintiff, who was represented by counsel, filed the complaint herein, setting forth the following factual allegations:

>That plaintiff is a man of Guyanese race and national origin.
>
>That plaintiff came to America approximately seven (7) years ago and began working for the defendant on or about September 17, 2001.
>
>That plaintiff was hired as a Machine Operator.
>
>That throughout the plaintiff's employment with the defendant, the plaintiff was treated differently than other employees not of a Guyanese decent.
>
>That on or about December 15, 2001 the plaintiff attempted to ask a question of Diane Stangle, the Human Resources Coordinator. Ms. Stangle did not answer the plaintiffs question and also mocked the plaintiff in front of other employees.
>That on or about February 16, 2002 Michael Forslund and another co-worker of the plaintiffs asked the plaintiff how come Guyanese immigrants 'were buying houses for

cash in Schenectady. On that same date, Michael Forslund pushed the plaintiff in the shoulder and also grabbed the plaintiff around his lower back and wrestled the plaintiff up an[d] down. Mr. Forslund put the plaintiff down after being requested to by the plaintiff and then Mr. Forslund kissed the plaintiff on the face.

That on or about May 25, 2002, Mike Vainauskas spoke to the plaintiff in a manner that was degrading and disrespectful.

That on or about May 28, 2002 the plaintiff went to the QC office to get measuring tools. Mike Vainauskas yelled at plaintiff to get out in the presence of Mark Longstaff and Chuck Zimmerman. Mr. Vainauskas also tried to sell the plaintiff expired raffle tickets.

That on or about May 30, 2002 Dan Petchel was holding a broom stick in his hand and was making a ramming action toward the plaintiff indicating that Mr. Petchel wanted to place the broom stick in the plaintiff's buttocks.

That on or about June 7, 2002 the plaintiff went to the QC office to get an 8" stud inspected. Mark Longstaff took the stud and told the plaintiff to bend over while Mr. Longstaff was performing a ramming action toward the plaintiff's buttocks. Joe Barone and Chuck Zimmerman were present and were laughing.

That on or about June 14, 2002 Mark Longstaff hit the plaintiff in and about his ears.

That on or about June 19, 2002, Mark Longstaff caressed the plaintiff's nipples as if he were caressing a woman's breasts. Joe Barone and Chuck Zimmerman were also present at that time. At that time Joe Barone said "Oh, go home and cry like a baby to your wife now."

That other incidents have occurred wherein other co-workers would tell the plaintiff to "Get the F-ck out of here."

That plaintiff made complaints of the above-mentioned harassing behaviors to the individuals perpetrating the acts. The acts were also perpetrated by managers and/or witnessed by managers of the defendant corporation.

That no other employees were treated in the above manner.

That plaintiff believes that the harassment which he has suffered was because of his national origin and race.

That plaintiff is claiming that he was constructively terminated on July 17, 2002 when he was laid off from his position.

(Paragraph numbering omitted.)  The complaint asserts causes of action under 42 U.S.C. § 1981 ("section 1981"); 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and Article 15 of the New York State Executive Law ("Human Rights Law").

Thereafter, after a hearing, United States Magistrate Judge Randolph F. Treece granted plaintiff's counsel's motion for leave to withdraw from representation of plaintiff.  Upon appeal by plaintiff, this Court affirmed.  Plaintiff is now proceeding *pro se*.

Presently before the Court is defendants' motion for summary judgment, supported by documents, affidavits, a Memorandum of Law, a Local Rule 7.1(a)(3) Statement, and a transcript of the deposition of plaintiff.  The Court notes that the notice of summary judgment gives plaintiff notice of the consequences of an summary judgment motion.  Plaintiff has responded with a letter dated April 11, 2005, and an affidavit and Memorandum of Law dated April 26, 2005.  Plaintiff does not submit a response to defendants' Local Rule 7.1(a)(3) Statement, but in view of his *pro se* status, the Court overlooks this omission and addresses the parties' submissions on their merits.

## DISCUSSION

**Summary judgment standard**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact

requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

**First cause of action: Section 1981**

Plaintiff claims that his race and national origin "were motivating factors in the defendant's decision to lay the plaintiff off" thus constituting discriminatory constructive termination in violation of section 1981. This statute provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to ... the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]

42 U.S.C. § 1981(a).

The Court analyzes plaintiff's section 1981 claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Taitt v. Chemical Bank*, 849 F.2d 775, 777 (2d Cir. 1988). First, plaintiff must establish a *prima facie* case of discrimination by showing that he: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was subjected to an adverse employment action; and (4) that the circumstances of the adverse employment action give rise to an inference of discrimination.

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. "This burden is one of production, not persuasion[.]" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000).

If the defendant meets this burden, the burden shifts back to plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's reasons are merely pretext for discrimination. *See id.* at 143. At this stage, the court evaluates whether plaintiff has submitted "evidence

sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by ... discrimination[.]" *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997). Evidence that the employer's asserted justification is false may be pertinent on this issue. *See Reeves*, 530 U.S. at 148.

Here, although plaintiff has shown that he is a member of a protected class, was qualified for the position at issue, and was laid off from the position, there is no basis to find that the circumstances give rise to an inference of discrimination. However, even assuming that plaintiff's submissions make out a *prima facie* case of discriminatory constructive termination, the affidavit of Robert W. Golden, President of defendant Greno Industries, Inc. ("Greno"), establishes a legitimate, nondiscriminatory reason for plaintiff's layoff, *i.e.*, that for economic reasons Greno was compelled to lay off one-third of its workforce.[1] Nothing in plaintiff's submissions would allow a rational factfinder to infer that the reason given by Greno was pretextual or that Greno was actually motivated in whole or in part by discrimination. Defendants have demonstrated their entitlement to judgment dismissing this cause of action as a matter of law. Plaintiff has raised no material questions of fact.

**Second cause of action: Title VII**

In his second cause of action, plaintiff claims that he was subjected to a hostile workplace due to his race and national origin in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. To succeed on this claim plaintiff must establish that, due to his race or national origin, the workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or

---

[1] Indeed, Golden further states that the layoffs began in March 2002 and plaintiff was not laid off until July 2002.

pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (citations and quotation marks omitted). Plaintiff must prove both that the conduct at issue was so severe or pervasive as to create an objectively hostile or abusive work environment, and that he subjectively perceived the environment to be abusive. *See id.* On a summary judgment motion, the Court must consider the totality of the circumstances and evaluate the quantity, frequency, and severity of the incidents in order to obtain a realistic view of the work environment. *See Richardson v. New York State Dept. of Corr. Serv.*, 180 F. 3d 426, 436-37 (2d Cir. 1999).

Plaintiff's deposition testimony amply demonstrates that he perceived the environment to be abusive. Thus, the issue here is whether the evidence would support a conclusion that a reasonable person would find the conduct described to be so severe or pervasive as to create a hostile environment. Viewing the evidence in the light most favorable to the plaintiff and drawing all reasonable inferences in his favor, the Court finds that defendants have demonstrated that the circumstances, taken as a whole, do not establish that plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult, or that the conduct was so severe or pervasive as to create an objectively hostile or abusive work environment. Moreover, defendants have established that no reasonable person would find the conduct complained of was based on plaintiff's race or national origin. Plaintiff's submissions fail to raise a material question of fact on these issues. Summary judgment dismissing the second cause of action is warranted. [2]

**Third cause of action: Human Rights Law**

---

[2] To the extent that plaintiff's second cause of action may be read to allege disparate treatment or discriminatory constructive termination, it lacks merit for the same reasons as the first cause of action.

In all relevant respects, plaintiff's claims of hostile work environment, disparate treatment and/or discriminatory constructive termination under New York State Human Rights Law are analyzed using the same standards as apply in section 1981 and Title VII cases. *See, e.g., Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998); *Matter of Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937, 939 (1985). Thus, summary judgment is granted dismissing these claims for the reasons set forth above.

## CONCLUSION

In view of the Court's holdings, it is not necessary to reach the other issues raised on the motion.

It is therefore

ORDERED that defendants' motion for summary judgment is granted; and it is further

ORDERED that the action is dismissed in its entirety.

IT IS SO ORDERED.

January 3, 2006
Syracuse, New York

Norman A. Mordue
U.S. District Judge